**DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 09-00017 |
| Plaintiff, | |
| vs. | **OPINION AND ORDER RE:**<br>**MOTION TO DISMISS INDICTMENT FOR**<br>**VIOLATION OF DEFENDANT'S SPEEDY TRIAL** |
| ERIC ARTHUR BERG, | **RIGHTS UNDER THE INTERSTATE AGREEMENT**<br>**ON DETAINERS** |
| Defendant. | |

This cause came before the court upon the defendant's Amended Motion to Dismiss filed on July 7, 2011. Docket No. 17.[1] Evidentiary hearings on the motion were held on August 3 and 4, 2011. At the hearing held on August 3, 2011, the Assistant U.S. Attorney presented additional case law she wanted the court to consider.[2] After considering the motion, opposition,

---

[1] The motion was first filed on July 1, 2011 (Docket No. 16). The motion was subsequently amended on July 17, 2011 to include a second exhibit that was referred to in the initial motion but not attached. Accordingly, the court considers the Amended Motion.

[2] The court continued the hearing in order to give opposing counsel and the court an opportunity to review the following cases: *Reed v. Farley,* 512 U.S. 339 (1994); *New York v. Hill,* 528 U.S. 110 (2000); *United States v. Lualemaga,* 280 F.3d 1260 (9th Cir. 2002); *United States v. Rodriguez-Aguilera,* No. 02-10298, 2003 WL 21054707 (9th Cir. May 5, 2003) (unpublished memorandum); *United States v. Rose,* No. CR03-4028-DLJ, 2009 WL 282025 (N.D. Cal. February 4, 2009) (unpublished slip opinion); and *United States v Landis,* No. 2:09-CR-0296 FCD, 2010 WL 1328724 (E.D. Cal. March 29, 2010) (unpublished memorandum and order). Counsel is cautioned that in the future, she should provide any additional documents she intends to rely upon to opposing

argument of counsel and the record herein, the court hereby **GRANTS** the Defendant's Motion to Dismiss with Prejudice for the following reasons.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2010, Mr. Eric Berg ("defendant") was convicted of three counts of Forgery and three counts of Identity Theft in the Second Judicial District Court, Bernalillo County, New Mexico. *See* Docket No. 17. On June 14, 2010, he was sentenced to five years imprisonment in the New Mexico state prison system with credit for time served of 502 days. *Id.*

On April 15, 2009, the defendant was indicted in this court for Mail Fraud, in violation of 18 U.S.C. § 1341. *See* Docket No. 1. On that same day, the court issued a warrant for his arrest. *See* Docket No. 2. On July 15, 2009, the United States Attorney, via the U.S. Marshals Service, lodged a federal detainer against the defendant, based on the Guam case, CR 09-00017, while he was a prisoner in the custody of the State of New Mexico. *See* Docket No 5. The detainer, entitled "Detainer Against Unsentenced Prisoner," read in part:

> The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do **NOT** apply to this detainer because the subject is not currently serving a sentence of imprisonment at the time the Detainer is lodged. **IF THE SUBJECT IS SENTENCED WHILE THE DETAINER IS IN EFFECT, PLEASE NOTIFY THIS OFFICE AT ONCE**. (bold and capital letters in original).

*Id.*

After the defendant was sentenced, it is unclear if the New Mexico state warden ever informed the defendant of his rights under the Interstate Agreement on Detainers ("IAD") to request a final disposition of the federal charges against him. The detainer the defendant received in July 2009 was a United States Marshal Services Form 16B, ("Form USM-16B"),

---

counsel and the court well in advance of the hearing. Failure to do so may result in the imposition of sanctions. It is a waste of judicial resources and unfair for government counsel to expect that opposing counsel and the court will be able to review the cases during the hearing and proceed intelligently.

Moreover, the court notes that after reviewing the cases, none of them support the government's position. In particular, the court finds it perplexing that the government would rely upon *Landis*, when it is the most on point to this case factually and bolsters the defendant's motion.

whereas the form a defendant receives once he is sentenced is Form USM-17.[3]

On October 21, 2010, the defendant mailed a copy of his Demand for Speedy Trial based on the IAD to both this court and the prosecuting Assistant U.S. Attorney. This court received his Demand for Speedy Trial on November 3, 2010. *See* Docket No. 5. The defendant believes the U.S. Attorney's Office received his Demand for Speedy Trial at the same time as this court.[4] *See* Docket No. 17. On January 3, 2011, he mailed a second Demand for Speedy Trial based on the IAD to both this court and the prosecuting Assistant U.S. Attorney. This court received defendant's second Demand for Speedy Trial on January 11, 2011. *See* Docket No. 6. In both of his Speedy Trial Demands, he listed his address as the New Mexico Department of Corrections in Clayton, New Mexico and demanded that there be timely disposition of the pending federal charge pursuant to the IAD. *See* Docket Nos. 5 and 6.

On May 5, 2011, the Assistant U.S. Attorney presented a Petition for Writ of Habeas Corpus Ad Prosequendum. *See* Docket 7. On that same day the Magistrate Judge ordered the issuance of the writ to the Warden of the Northeast New Mexico Detention Facility for the State of New Mexico. *See* Docket No. 8. Thereafter the defendant was transported to Guam to attend his initial appearance held on May 23, 2011. *See* Docket No. 9.

After his initial appearance, the defendant filed the instant motion claiming that the case should be dismissed with prejudice under the IAD because the U.S. Attorney's Office had failed to try him within 180 days after it was provided notice of his speedy trial request. He claims that approximately 233 days have passed since his first Speedy Trial Demand which was filed on November 3, 2010 and the original motions filing deadline of June 24, 2011. *See* Docket No. 22, n.1.

///

---

[3] Many of the cases reviewed concern the United States Marshals Service providing notice to the defendants of their IAD rights via Form USM-17. Here, there is no evidence that the defendant received that form or any other form once he was sentenced.

[4] E-filing procedures of the court result in email copies of the matter filed being sent to the U.S. Attorney's Office.

## II. ANALYSIS

The IAD is a congressionally sanctioned compact which the United States, 48 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands have adopted. *Carchman v. Nash*, 473 U.S. 716, 719 (1985). The IAD is based on a legislative finding that "charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." 18 U.S.C. App. 2, § 2, Art. I. Prior to the passage of the IAD, a jurisdiction could file a detainer on a prisoner and then wait to prosecute its case until after the prisoner's release from incarceration in the first jurisdiction. *Birdwell v. Skeen*, 983 F.2d 1332, 1335 (5th Cir. 1993).

However, long outstanding detainers disadvantage prisoners in several significant ways. *See* Bradford R. Clark, *The Effect of Violations of the Interstate Agreement of Detainers on Subject Matter Jurisdiction*, 54 FORDHAM L. REV.1209, 1210 n.12 (1986). First and foremost, delays in prosecution jeopardize prisoners' ability to defend themselves in court before the passage of time dulls memories and witnesses disappear. S. REP. NO. 91-1356, 91st Cong., at 2 (1970) as *reprinted* in 1970 U.S.C.C.A.N. 4864, 4865. Second, many institutions keep prisoners who have detainers lodged against them in closer custody. *Id.* at 4866. Institutions might also restrict many of those prisoners' privileges and sometimes deem the prisoners ineligible for desirable work assignments or good time credit. *Id.* Finally, because of the uncertainty of their futures, prisoners with outstanding detainers sometimes lose interest in rehabilitative, education, and other institutional opportunities. *Id.*

To combat the negative effects of longstanding detainers, the IAD was enacted. The purpose of the IAD is to provide for the speedy disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction. *Alabama v. Bozeman,* 533 U.S. 146, 148 (2001). Under the IAD when a defendant in one jurisdiction is incarcerated in

///

///

///

another jurisdiction, either the prisoner himself (under Article III[5]) or the prosecutor in the jurisdiction where the charge is pending (under Article IV[6]) can initiate proceedings to bring the prisoner to trial.

Once a prisoner invokes his rights under Article III, the IAD requires the U.S. Attorney's Office to bring a prisoner to trial "within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice" of his demand for speedy trial. 18 U.S.C. App. 2, § 2, Art. III(a). The IAD requires that the court and prosecuting officer be given notice "of the place of his imprisonment" and of "his request for a final disposition to be made of the indictment, information or complaint." 18 U.S.C. App. 2, § 2, Art. III(a).[7] The prisoner's request must be

---

[5] Article III(a) of the IAD provides that a prisoner:

> shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction *written notice of the place of his imprisonment and his request for final disposition* to be made of the indictment, information, or complaint:
>
> provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

18 U.S.C. App. 2, §2, Art. III(a) (emphasis added).

[6] Pursuant to Article IV of the IAD, the prosecuting officer can seek the return of a prisoner to face trial. When the government invokes the right to proceed to trial under this article, trial must be "commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State..." 18 U.S.C. App. 2, § 2, Art. IV(c).

[7] Article III(a) of the IAD provides that a prisoner:

> shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction *written notice of the place of his imprisonment and his request for final disposition* to be made of the indictment, information, or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of

- 5 -

forwarded by registered mail or certified mail, by the official having custody of the prisoner. 18 U.S.C. App. 2, § 2, Art. III(b).

In *Fex v. Michigan*, 507 U.S. 43 (1993), the Supreme Court interpreted this provision under Article III to mean that the 180-day clock does not start until the defendant's demand "has actually been delivered to the district court and prosecuting officer that lodged the detainer against him." *Id.* at 52. If the demand is made and the indictment is not brought to trial within the period provided in Article III, then the appropriate remedy is dismissal with prejudice.[8] *Id.* However, if the United States is the receiving state, a dismissal may be with or without prejudice. 18 U.S.C. App. 2, § 2, Art. IX, § 9(i).

Against this background the court must determine one, whether the U.S. Attorney's Office violated the IAD provisions in its prosecution of the defendant and two, if a violation is found, what is the remedy.

*A.  When did the clock begin to run?*

The court must first determine whether there has been a violation. On November 3, 2010, this court received the defendant's "DEMAND FOR SPEEDY TRIAL" which referenced

---

> the prisoner *shall be accompanied by a certificate of the appropriate official having custody of the prisoner*, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

18 U.S.C. App. 2, Art. III(a) (emphasis added).

[8] Article V(c) of the IAD provides:

> [I]n the event that an action on the Indictment, Information, or Complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided for in Article III
> . . . the appropriate court of jurisdiction where the Indictment, Information, or Complaint has been pending shall enter an order dismissing the same with prejudice and any detainer based there on shall cease to be of any force or effect.

18 U.S.C. App. 2, § 2, Art. V(c).

- 6 -

the IAD and listed his address at the New Mexico Department of Corrections in Clayton, New Mexico. Docket No. 5. It appears that the U.S. Attorney's Office received the defendant's Demand for Speedy Trial at the same time.[9] Again, on January 3, 2011, the defendant sent a second demand for a speedy trial to the court and the Assistant U.S. Attorney. Docket No. 6.[10] As with his first demand, the defendant captioned his document "DEMAND FOR SPEEDY TRIAL" and referenced the IAD.

The Assistant U.S. Attorney argues that the 180 days were never triggered because the defendant failed to strictly comply with the requirements of Article III. Specifically the defendant failed to provide the required certificate of inmate status pursuant to Article III(a).

> The request of the prisoner shall be ***accompanied by a certificate*** of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

18 U.S.C. App. 2, § 2, Art. III(a) (emphasis added).

In support of the government's position, the Assistant U.S. Attorney relies upon *United States v. Dent*, 149 F.3d 180 (3rd Cir. 1998), *cert. denied*, 525 U.S. 1085 (1999). In *Dent* a prisoner sent a letter to the district court requesting a speedy trial under the IAD on his outstanding federal charges. However, the Third Circuit rejected the prisoner's claim that he was entitled to dismissal of the charges since the letter did not include the information required by Article III of the IAD of an inmate certificate. *Id.* at 187.

The court's decision was based on the fact that the prisoner's letter "did not include his term of commitment, the time already served, the time remaining to be served on his sentence, or any information concerning good-time credits or parole eligibility as required under Article III." *Id*. at 186-87. This was so even though the prosecutor already had most of the information, and even though the prison warden had failed to meet his obligations under Article III. *Id.* The court

---

[9] *See* note 4, *supra.*

[10] *See* note 9, *supra.*

concluded that the prisoner's letter did not trigger the IAD clock: "To hold otherwise would 'create a trap for the unwary prosecuting officials and … defeat the underlying purpose of Article III's procedural requirements …." *Id.* at 187 (quoting *Casper v. Ryan*, 822 F.2d 1283, 1292-93 (3rd. Cir. 1987)).

However, in contrast to *Dent*, the Ninth Circuit has found substantial compliance is enough.[11] In *Johnson v. United States*, 196 F.3d 1000 (9th Cir. 1999), the Ninth Circuit reversed the district court's denial of a motion to dismiss under the IAD and held that the defendant substantially complied with IAD Article III(a) when the public defender notified the district court of the prisoner's invocation of his IAD right.[12] The court stated "it is undisputed that the public defendant's letter to the court contained the information required by the IAD to be conveyed to the district court, for the letter expressly stated that Johnson was serving a sentence in the state of Washington and that he requested speedy trial." *Id.* at 1004.

In *Johnson,* as here, it seems clear that the defendant's demands for a speedy trial substantially complied with the information required under the IAD. Both of the filings sent to the court and the U.S. Attorney's office were captioned with his name and the correct case number and were titled "<u>DEMAND FOR SPEEDY TRIAL.</u>" *See* Docket Nos. 5 and 6. They expressly stated that the defendant was requesting a speedy trial under the IAD. In the second letter dated January 11, 2011, he also indicated that he was "sentenced and in custody." Docket No. 6.

The IAD states that "[t]his agreement shall be liberally construed so as to effectuate its

---

[11] Despite its ruling, the *Dent* court nonetheless recognized a potential exception to the rule of strict compliance if the prisoner can show that "she/he substantially complied to the extent possible." *Dent*, 149 F.3d at 187.

[12] The court cannot understand the Assistant U.S. Attorney's insistence that this court rely on the Third Circuit decision of *Dent* instead of *Johnson*. Counsel should know that this court is bound by the rulings of the Ninth Circuit. *See e.g., United States v. Maxey*, 989 F.2d 303 , 305 (9th Cir. 1993) (district court is bound by Ninth Circuit precedent until it is overruled by the Ninth Circuit *en banc* or the Supreme Court); *see also Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir. 1987) ("[D]istrict Courts are, of course, bound by the law of their own circuit.").

- 8 -

1  purpose." 18 U.S.C. App. 2, § 2, Art. IX. It seems clear that a violation of the IAD occurred.
2  However, even with a liberal reading of the IAD and a finding that the U.S. Attorney's Office
3  violated the defendant's rights under the IAD, the analysis does not end. The remaining question
4  concerns whether to dismiss the case with or without prejudice.

### B.     *Should Dismissal be With or Without Prejudice*

As previously mentioned, because the United States is the receiving state, the court must make a determination whether to dismiss with or without prejudice. "Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State– (1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice." 18 U.S.C. App. 2, § 9. In making this determination, the court must consider "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice."[13] *Id.* "Like a Speedy Trial Act dismissal, a court exercising discretion under Section 9 must completely consider all of the factors relevant to the options available under the Act." *United States v. Kurt,* 945 F.2d 248, 252 (9th Cir. 1991).

#### 1.     **Seriousness of the Offense**

First, the court must consider the seriousness of the charge. The Ninth Circuit has advised that a district court must take a "broad view" in reviewing the relevant facts and circumstances of the crime. *See, e.g., Kurt,* 945 F.2d at 252. The seriousness of the charge standard may be judged by how the Sentencing Guidelines would evaluate the charged conduct. *Id.* at 252.

The defendant is charged with one count of mail fraud in violation of 18 U.S.C. § 1341.

---

[13] These are the same factors applied under the Speedy Trial Act. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal, and the impact of reprosecution on the administration of the Act and the administration of justice." 18 U.S.C. § 3162(a)(2).

*See* Docket No. 1. He allegedly wrote a false check for approximately $24,000 from Bank Pacific for a used car in Phoenix, Arizona. *See* Docket No. 1. Bank Pacific never honored the check and the victim is the used car owner in Arizona. *Id.*

Based on the limited facts before this court, it appears that the base offense level for this offense is level 7 under the United States Sentencing Guidelines ("U.S.S.G") § 2B1.1(a)(1). It is likely that an adjustment pursuant to U.S.S.G. §2B1.1(b)(1)(c) of plus 4 will be applied based upon the amount of the loss which is more than $10,000 but less than $30,000. At an offense level of 11, the defendant would be facing a sentencing range of 8-14 months. While recognizing that all federal offenses are serious, the present offense is in the lower 25% of the sentencing guideline table, classified under Zone B and considered less serious than many others. Accordingly, this factor supports dismissal with prejudice.

**2. Facts and Circumstances Leading to the Violation of the Speedy Trial Act**.

Next, the court must evaluate the facts and circumstances that led to the dismissal. Here, the U.S. Attorney's Office– twice was put on notice that the defendant was asserting his speedy trial rights under the IAD. Once on November 3, 2010, when his first demand was received by both this court and the prosecuting Assistant U.S. Attorney and again on January 11, 2011, when his second demand was filed. *See* Docket Nos. 5 and 6. Notwithstanding these notices, the U.S. Attorney's Office took no immediate action. It was only on May 5, 2011, that the U.S. Attorney's Office filed its Petition for Writ of Habeas Corpus Ad Prosequendum. Docket No. 7. On May 23, 2011, the defendant appeared before the Magistrate Judge for an initial appearance on the indictment in this case. *See* Docket No. 9.

Although it does not appear that this is an instance of prosecutorial bad faith or an intentional violation of the IAD the U.S. Attorney's Office's failure to act in a timely manner is inexplicable. At the hearing, the Assistant U.S. Attorney stated that when she received the defendant's filings she reviewed the statute and decided to rely upon a literal reading of the IAD requirements and on case law. If that is the case, then counsel must have also noticed that the IAD states that it is to be "liberally construed so as to effectuate its purpose." 18 U.S.C. App. §

2, Art. IX. With respect to case law, had counsel reviewed Ninth Circuit cases she would have found *Johnson* and known that she would need to take more immediate action.[14] The government offers no reasonable excuse for its failure to act more swiftly in ensuring that it complied with the IAD. Moreover, there have been prior issues with the U.S. Attorney's Office concerning compliance with speedy trial issues.[15] Accordingly, this single factor weighs heavily in favor of dismissal with prejudice.

### 3. Impact of Reprosecution on the IAD and on the Administration of Justice

Finally, the third factor the court must consider is the impact of reprosecution on the administration of the IAD and on the administration of justice. *Kurt,* 945 F.2d at 252. Here, the defendant has twice asserted his rights under the IAD to no avail. The government failed to take action despite the IAD's clear mandate for swift prosecution. Thus, dismissal without prejudice could be viewed as frustrating that mandate since it would open the way to retrial after an even longer delay.[16]

On the other hand, reprosecution would further the public's interest in bringing offenders to trial. And, the defendant has not demonstrated that he has suffered prejudice from the delay. Nor has defendant's ability to defend the mail fraud case appear to have been hampered by the

---

[14] At a minimum the case law should have given government counsel enough cause to request a status hearing concerning whether the demand letters would trigger the 180-day timetable.

[15] Only a few months ago, the court dismissed a case with prejudice because of a violation of the Speedy Trial Act. *See United States v. Dennis Perez*, Criminal Case No. 09-00025. In *Perez*, government counsel admitted that she and two of her colleagues were unaware of 18 U.S.C. §3161(h)(1)(H). The court noted "[w]hile the court agrees with Government counsel that there is no evidence of bad faith on behalf of the Government or of a deliberate attempt to flout the Speedy Trial Act, there is evidence of an extremely lax attitude and lack of awareness regarding the Act." Cr. 09-00025 *United States v. Dennis Perez,* p. 10:16-18.

[16] Here, there is no indication that the defendant was provided a USM Form 17 or any other form that would have clearly and explicitly set forth the requirements under the IAD. The defendant did all that he could by sending demand letters to both the government and the court. The U.S. Attorney's Office would have this court penalize the defendant for not following the requirements when he was never given any notice of what those requirements were. To agree with the government would clearly frustrate the administration of the IAD.

1 unavailability of witnesses and/or the loss of evidence. These two competing interests fairly
2 balance out, and accordingly, this factor cannot be said to weigh heavily either in favor of or
3 against dismissal with or without prejudice.

**III. CONCLUSION**

The court finds the defendant complied with Article III of the IAD in making his request for a speedy trial. The 180-day period ran without interruption from November 3, 2010, the day the court and the prosecuting attorney received the defendant's first demand, until the defendant's initial appearance held on May 23, 2011– with two hundred days having passed. Clearly, the time limit under the IAD has been violated and the delay is wholly the fault of the government. Accordingly, after weighing the factors under the IAD, the court grants the defendant's motion and hereby **DISMISSES** the indictment **WITH PREJUDICE**. Forthwith the defendant is ordered to be turned over to the U.S. Marshals Service for immediate transport to the New Mexico Department of Corrections in Clayton, New Mexico.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Aug 05, 2011